RECEIVED

SEP 27 2019

AT 8:30_____M
WILLIAM T WALSH, CLERK

FILED

SEP 27 2019

AT ___ 12:45 P M
WILLIAM T. WALSH
CLERK

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. (KM) |
| | : | |
| v. | : | Criminal No. 19-698 |
| | : | |
| GEORGE R. LAUFENBERG | : | 18 U.S.C. §§ 371, 664, 1027, and 2 |
| | : | |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges that at all times material to this Indictment:

### Background

1. Defendant George R. Laufenberg ("Defendant Laufenberg") was the Administrative Manager or Co-Administrative Manager of, and a participant in three employee benefit plans, as described herein, providing retirement and health benefits to members of the United Brotherhood of Carpenters in New Jersey and, after January 1, 2016, also to the members in New York State. Defendant Laufenberg was promoted to that position in 1984 by George H. Laufenberg, Sr., who was the head of the New Jersey Carpenters Union from at least 1979 until the early 1990s. Defendant Laufenberg was responsible for conducting the day-to-day operations of these plans. As Administrative Manager, Defendant Laufenberg was a fiduciary with respect to these plans and routinely made discretionary decisions that affected their management and the disposition of their assets.

2. The United Brotherhood of Carpenters ("the Carpenters Union") in New Jersey, in its various iterations, is a labor organization for purposes of the Labor

Management Relations Act of 1947, as defined by Sections 142 and 152 of Title 29, United States Code; and an employee organization, as defined by Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") and by Sections 1002 and 1003 of Title 29, United States Code.  As a labor organization in which employees participate as members, the Carpenters Union existed for the purpose of representing such members and employees in collective bargaining and in dealing with employers in an industry affecting interstate commerce, namely the construction business.  Its principal offices were located in Edison, New Jersey. The Carpenter's Union filed an LM-2 Labor Organization Annual Report with the Department of Labor each year.

3.        As part of the collective bargaining process, the Carpenters Union jointly established and maintained with employers the following plans (collectively, the "Funds") that provided pension, annuity, and health benefits to employees and each of which was subject to ERISA:

        a.        The New Jersey Carpenters Pension Fund, an employee benefit plan providing retirement benefits which, on or about January 1, 2016, was merged with another ERISA-covered plan to become the Northeast Carpenters Pension Fund (the "Pension Fund");

        b.        The New Jersey Carpenters Annuity Fund, an employee benefit plan providing retirement benefits which, on or about January 1, 2016, was merged with another ERISA-covered plan to become the Northeast Carpenters Annuity Fund (the "Annuity Fund"); and

   c. The New Jersey Carpenters Health Fund, an employee benefit plan providing medical and health care benefits which, on or about January 1, 2016, was merged with another ERISA-covered plan, to become the Northeast Carpenters Health Fund (the "Health Fund").

4. Each of the Funds was administered by a Board of Trustees composed of employer and employee representatives, as well as other professionals.  For their fiscal years ending in 2014, 2015 and 2016, the Pension Fund, Annuity Fund, and Health Fund each filed annual financial reports with the United States Department of Labor (Form 5500 Reports) as required by ERISA.  Each of the Funds, which were located in Edison, New Jersey, was governed by a written agreement (the "Plan Document") which represented controlling elements of the respective Funds.

5. As a fiduciary to each of the Funds, Defendant Laufenberg was required by ERISA, Title 29, United States Code, Sections 1104(a) and 1106, to discharge his duties:

   a. solely in the interest of the plan participants and beneficiaries;

   b. for the exclusive purpose of providing benefits to the participants and their beneficiaries and of defraying reasonable expenses for administering the Funds;

   c. with the care, skill, prudence and diligence of a reasonable person in particular financial transactions involving the Funds;

8.      In or about 1985, the Board of Trustees of the Pension Fund approved an Employment and Deferred Compensation Agreement (the "Agreement"), which has been restated and amended, with Defendant Laufenberg as an employee of the Fund.  Between 2000 and 2015, Defendant Laufenberg received ten salary increases, until his salary in 2015 was approximately $300,000.  The Agreement guaranteed Defendant Laufenberg a retirement package with two streams of income:   he would be entitled to receive a pension (the "Pension"), as well as a deferred compensation package (the "Deferred Compensation").   The Deferred Compensation was an unfunded and contractual waged-based obligation, payable as salary from the general treasury of the Pension Fund, only after Defendant Laufenberg had retired or been separated from his employment with the Funds.

9.      As an eligible participant in the Pension Fund,  Defendant Laufenberg was permitted to retire and receive his Pension with the approval of the Board of Trustees, provided that (a) he filed with the Board of Trustees, on or before the first day of the month of the first pension payment, an application for retirement on a form provided by the Trustees; (b) he submitted to the Trustees proof satisfactory to the Trustees of his date of birth and, if married, his spouse's date of birth and their marriage; and (c) he ceased all work in the industry.

10.     Pursuant to the Agreement, if Defendant Laufenberg continued in the employ of the Trustees until his retirement age, the Trustees would also provide him with a monthly retirement benefit (the Deferred Compensation), "commencing on the first day of the month following retirement", and calculated

5

          d.     by managing and administering each Fund in accordance with documents and instruments governing the Fund in a manner consistent with ERISA; and

          e.     by refraining from causing a Fund to engage in financial transactions prohibited by ERISA ("Prohibited Transactions").

6.     Pursuant to ERISA and Title 29, United States Code, Sections 1002(14), 1106(a), and 1108, Defendant Laufenberg was prohibited from causing the Funds to engage in a financial transaction when he knew, or should have known, that the transaction would result in a direct or indirect transfer of Fund assets for the use or benefit of a Fund fiduciary or employee as a "party in interest", unless the transfer of Fund assets is a benefit to which the fiduciary or employee is entitled as a beneficiary of the Fund or is reasonable compensation for services rendered to the Fund.  ERISA and Title 29, United States Code, Section 1106(b)(1) also prohibited Defendant Laufenberg, as a fiduciary, from dealing with the assets of the Funds in his own self-interest, or for his own account.

7.     ERISA and Title 29, United States Code, Section 1023 further require that transactions with persons known to be "parties in interest" with respect to the Funds must be reported and disclosed in financial reports (Form 5500 Reports) and filed annually with the United States Department of Labor and, thereafter published to the Funds' participants, as required by ERISA and Title 29, United States Code, Section 1024.

in an amount equal to one hundred percent (100%) of his salary, minus his pension disbursements.

11.     On September 25, 2015, after reaching the age of 65, Defendant Laufenberg unilaterally approved his own Pension and Deferred Compensation disbursements, without giving notice to or gaining the approval from the Board of Trustees, or ceasing work in the industry, as was required under the Agreement and Plan Document.

12.     After on or about January 1, 2016, Defendant Laufenberg became Co-Administrative Manager of the newly merged Funds.  The newly merged Northeast Health Fund became the "paymaster" for Defendant Laufenberg's salary, as well as for his Deferred Compensation disbursements.

13.     By the terms of the Agreement, Defendant Laufenberg was entitled to have the Pension Fund and, after on or about January 1, 2016, the Northeast Health Fund, pay his salary and make monetary contributions on his behalf to the Annuity Plan.  From at least in or around 2014 through December 31, 2016, Defendant Laufenberg unilaterally caused the Pension Fund and the Northeast Health Fund to pay annuity contributions as additions to his salary, that exceeded the limits on contributions imposed by the Title 26, United States Code, Section 401(a)(17),  without the knowledge and approval of the Board of Trustees.

## COUNT ONE
### (Embezzlement of Pension Benefits)

1.      The allegations set forth in Paragraphs 1 through 13 of this Indictment are hereby re-alleged as if set forth fully herein.

2.      From at least in or about October 1, 2015 through in or about December 31, 2016, in Middlesex County, and elsewhere, in the District of New Jersey, the defendant,

### GEORGE R. LAUFENBERG,

knowingly embezzled, stole, and unlawfully and willfully abstracted and converted to his use and the use of others, money, funds, property, and assets of the New Jersey Carpenters Pension Fund and, after on or about January 1, 2016, the Northeast Carpenters Pension Fund, employee benefit plans subject to ERISA, namely, money in excess of $140,000 disbursed to Defendant Laufenberg as unauthorized pension benefits to which he was not entitled.

In violation of Title 18, United States Code, Section 664 and Section 2.

## COUNT TWO
### (Embezzlement of Deferred Compensation Payments)

1.    The allegations set forth in Paragraphs 1 through 13 of this Indictment are

hereby re-alleged as if set forth fully herein.

2.    From on or about October 1, 2015, through on or about December 31,

2016, in  Middlesex County, and elsewhere, in the District of New Jersey,  the

defendant,

### GEORGE R. LAUFENBERG,

knowingly embezzled, stole, and unlawfully and willfully abstracted and

converted to his own use, money, funds, property, and assets of the New Jersey

Carpenters Pension Fund and, after on or about January 1, 2016, the Northeast

Carpenters Health Fund, employee benefit plans subject to ERISA, namely,

money in the approximate amount of $220,935 disbursed to Defendant

Laufenberg as unauthorized deferred compensation payments to which he was

not entitled.

            In violation of Title 18, United States Code, Section 664 and

Section 2.

## COUNT THREE
### (Embezzlement of Excess Annuity Fund Contributions)

1.     The allegations set forth in Paragraphs 1 through 13 of this Indictment are hereby re-alleged as if set forth fully herein.

2.     From at least as early as August 2014 through at least December 31, 2016, in Middlesex County, and elsewhere, in the District of New Jersey, the defendant,

**GEORGE R. LAUFENBERG,**

knowingly embezzled, stole, and unlawfully and willfully abstracted and converted to his own use, money, funds, property, and assets of the New Jersey Carpenters Pension Fund and, after January 1, 2016, the Northeast Carpenters Health Fund, employee benefit plans subject to ERISA, namely, money in the approximate amount of $47,000 paid to Defendant Laufenberg as an unauthorized increase of salary in lieu of contributions to the Annuity Fund to which he was not entitled.

In violation of Title 18, United States Code, Section 664 and Section 2.

## COUNT FOUR
### (Conspiracy to Embezzle With Low Show Employee)

1.     The allegations set forth in Paragraphs 1 through 13 of this Indictment are hereby re-alleged as if set forth fully herein.

2.     From at least as early as January 2000 through at least December 2016, in Middlesex County, and elsewhere, in the District of New Jersey, the defendant,

### GEORGE R. LAUFENBERG,

knowingly and intentionally conspired and agreed with unindicted coconspirator #1 and others, known and unknown, to embezzle, steal, and unlawfully and willfully abstract and convert to his own use and the use by unindicted coconspirator #1 the money, funds, property, and assets of the New Jersey Carpenters Funds, and after on or about January 1, 2016, the Northeast Carpenters Funds, employee benefit plans subject to ERISA, namely, money in the approximate amount of $1,250,000 consisting of salary and employee benefits to which unindicted coconspirator #1 was not entitled to receive, contrary to Title 18, United States Code, Section 664.

### Object of the Conspiracy

3.     It was the object of the conspiracy that, from at least as early as in or around 2000 and in or about December 2016, Defendant Laufenberg would agree to enrich unindicted coconspirator #1 by paying him as a full-time employee of the New Jersey Carpenters Funds, and after January 1, 2016, the Northeast Carpenters Funds, for which he did not perform full-time services and

by providing unindicted coconspirator #1 with unearned salary and other employee benefits to which he was not entitled.

## Manner and Means

4.     It was part of the conspiracy that, in or around 1992, Defendant Laufenberg in his capacity as the Administrative Manager, and contrary to his fiduciary duties to the New Jersey Carpenters Funds and their participants, placed unindicted coconspirator #1 on the staff of the New Jersey Carpenters Funds with the understanding that his role would be, at best, that of a part-time employee.  Thereafter, unindicted coconspirator #1 was compensated as a full time employee of the New Jersey Carpenters Funds, and after on or about January 1, 2016, the Northeast Carpenters Funds, and received contributions for health care, pension and annuity benefits.

5.     It was further part of the conspiracy that Defendant Laufenberg allowed unindicted coconspirator #1 to continue providing consulting services to independent clients for which he was separately paid and which consulting services were unrelated to his position as an employee of the Carpenters Funds and for which he performed legitimate services.

6.     It was a further part of the conspiracy that, in or about 2007, Defendant Laufenberg approved an "in service" (without retiring) pension benefit to unindicted coconspirator #1 which was not authorized by the Plan Document or Board of Trustees and to which unindicted coconspirator #1 was not entitled.

7.     It was a further part of the conspiracy that, in or about 2013, Defendant Laufenberg permitted unindicted coconspirator #1 to receive distributions from

the Annuity Fund, which were unlawfully accumulated from unauthorized contributions based on unearned income to which unindicted coconspirator #1 was not entitled to receive.

### Overt Acts

8.     In furtherance of the conspiracy and to effect its unlawful object, Defendant Laufenberg and other coconspirators committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

        a.     From at least in or around January 2000 until in or around December 2016, Defendant Laufenberg caused an annual salary to be paid to unindicted coconspirator #1 of between approximately $37,000 and approximately $55,000 in return for services not performed;

        b.     From at least in or around January 2000 until in or around December 2016, Defendant Laufenberg arranged for unindicted coconspirator #1 to be falsely credited with 37.5 hours of work for the Funds, without any supporting data;

        c.     In or around 2007, Defendant Laufenberg awarded unindicted coconspirator #1 an "in service" pension benefit to which unindicted coconspirator #1 was not entitled pursuant to the Plan Document and which was not, as required, approved by the Board of Trustees;

        d.     In or around 2013, Defendant Laufenberg arranged for unindicted coconspirator #1 to begin receiving annual distributions of annuity

12

benefits to which unindicted coconspirator #1 was not entitled, in amount of approximately $21,000;

        e.     From in or around at least 2000 through in or around December 2016, Defendant Laufenberg granted health care coverage in excess of $200,000 to unindicted coconspirator #1, and his dependents, to which he was not entitled.

All in violation of Title 18, United States Code, Section 371.

## COUNT FIVE
### (False Statement in Form 5500)

1.      The allegations set forth in Paragraphs 1 through 13 are hereby re-alleged as if set forth fully herein.

2.      On or about October 17, 2016, in Middlesex County, and elsewhere, in the District of New Jersey, the defendant,

### GEORGE R. LAUFENBERG,

in a document required by Title I of ERISA, specifically, Title 29, United States Code, Section 1023, to be published and filed with the United States Department of Labor, made false statements and representations of fact, knowing them to be false, and knowingly concealed, covered up, and failed to disclose facts the disclosure of which was necessary to verify, explain, clarify and check for accuracy and completeness of such document, that is, Defendant Laufenberg made false statements and failed to disclose information in the annual financial report (Form 5500 Annual Return/Report of Employee Benefit Plan) filed with the United States Department of Labor on behalf of the New Jersey Carpenters Annuity Fund for the period of January 1, 2015, until December 31, 2015, regarding the existence of nonexempt transactions by a party-in-interest.

           In violation of Title 18, United States Code, Section 1027 and Section 2.

## FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FOUR

1.     As a result of committing the pension and annuity fund embezzlement offenses charged in Counts One through Four of this Indictment, the defendant,

### GEORGE R. LAUFENBERG,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the violations of Title 18, United States Code, Sections 371 and 664, and all property traceable thereto, alleged in Counts One through Four of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNT FIVE

2.     As a result of committing the false statements relating to ERISA offense charged in Count Five of this Indictment, the defendant,

### GEORGE R. LAUFENBERG,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all property, real and personal, obtained by the defendant that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense in violation of Title 18, United States Code, Section 1027 alleged in Count Five of this Indictment.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

3.      If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with a third party;
>
> c.  has been placed beyond the jurisdiction of the court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property which cannot be divided
>     without difficulty;

the United States shall be entitled, pursuant to 18 U.S.C. §§ 982(b)), to forfeiture

of any other property of the defendant up to the value of the above-described

forfeitable property.


A True Bill


_____
Foreperson


_Craig Carpenito_

Craig Carpenito
United States Attorney

16

CASE NUMBER: 19-698(KM)

**United States District Court**
**District of New Jersey**

UNITED STATES OF AMERICA

v.

**GEORGE R. LAUFENBERG**

# INDICTMENT

18 U.S.C Sections 371,664,1027 & 2

CRAIG CARPENITO
UNITED STATES ATTORNEY,
NEWARK, NEW JERSEY

V. GRADY O'MALLEY
*SENIOR LITIGATION COUNSEL*
*NEWARK, NEW JERSEY*
973-645-2725